COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT

NORFOLK, SS.                                                                  SUPERIOR COURT DEPARTMENT

04 00411

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

GERBER RADIO SUPPLY CO., INC.  *
d.b.a. GERBER ELECTRONICS,     *
    Plaintiff                  *
                               *
                               *     CIVIL ACTION #
   -vs-                        *
                               *
CINCH CONNECTOR, INC.          *
    Defendant                  *

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

1.    This is a cause of action based on claims of violations of breach of contract and unjust enrichment. The case is brought by the plaintiff distributor seeking damages against the defendant supplier, because of its failure to accept the return of inventory from the distributor after the termination of the parties' distributorship agreement. In the alternative to seeking damages, plaintiff seeks an injunction against the defendant supplier requiring it to accept the return of its inventory in exchange for payment for the inventory.

2.    This Court has jurisdiction pursuant to M.G.L. c. 212 § 4 and c. 214 § 1. Venue is properly laid under M.G.L. c. 223 § 8.

## THE PARTIES

3. Plaintiff Gerber Radio Supply Co., Inc., d.b.a. Gerber Electronics (hereafter "Gerber") is a Massachusetts corporation with a usual place of business in Norwood, Massachusetts. Gerber is a distributor of electronic components, including, among other things, connectors.

4. Defendant Cinch Connector, Inc. ("Cinch") is a corporation headquartered in Illinois and registered with the Secretary of State to do business in Massachusetts. Cinch is the manufacturer, of among other things, connectors.

## THE FACTS

5. On or about May 20, 1994, Cinch and Gerber entered into a Distributorship Agreement ("the Agreement").

6. On November 21, 2002, pursuant to Section 26.2 of the Agreement, Gerber terminated the Agreement solely for the convenience of the terminating party by giving at least thirty (30) days' advance notice in writing of its election to do so.

7. From on or about May 20, 1994 through November 21, 2002, the parties conducted their business relationship pursuant to the terms of the Agreement.

8. Section 27.1 of the Agreement provided:

> If this Agreement is terminated under the provisions of Section 26.2, Cinch will repurchase Distributor's unsold inventory of Products subject to the conditions of Section 28.0 and the following conditions:
>
> . . . (b) If Distributor terminates, Distributor will be paid in accordance with Section 28.5 for Program Products less a ten percent (10%) restocking charge.

9. Section 28.2 of the Agreement provided:

> Only Program Products which are not obsolete or damaged and are in good, clean and resalable condition will be accepted. Where Program Products have been provided by

Cinch have been provided by Cinch in standard packaging, such packaging must not be broken or damaged.

10. On November 21, 2002, pursuant to Section 28.5 of the Agreement, Gerber sent Cinch a list of inventory Gerber had purchased from Cinch, showing items, quantities and price substantiation, seeking to return eligible inventory to Cinch.

11. In total, Gerber listed inventory for which it had paid $99,393.59. Seventy seven Thousand, Nine Hundred and Fifty Dollars and Thirty Five Cents ($77,950.35) of this inventory was still listed for sale in a price list issued by Cinch on November 15, 2002, i.e. only seven (7) days prior to the date of termination. All of this inventory was Program Product in good, clean and resalable condition.

12. Section 28.3 of the Agreement provided in relevant part:

> Distributor agrees to provide Cinch with a list of its unsold inventory within thirty (30) days of the effective date of termination showing items, quantities and price substantiation. . . . Within two (2) weeks of receipt of such list from Distributor, Cinch will issue to Distributor a Return Authorization specifying items, quantities and prices eligible for return.

13. Cinch never issued Gerber a Return Authorization specifying which items it determined were eligible for return.

14. Instead, Cinch informed Gerber that it considered the inventory too old to be returned, despite the fact that it was in good, clean and resalable condition and was listed in the Cinch current price list.

15. Section 6.2 of the Agreement provides:

> In the event Cinch decides to discontinue production or withdraw from sale any Program Product without offering Distributor an upgraded or replacement Program Product which is equivalent in form, fit and function and saleable as a direct replacement for an existing Program Product, such withdrawn Product will be considered obsolete. In such event,

Cinch shall notify Distributor that it will accept returns of such Program Products and specify the time period and conditions (in addition to the conditions of Section 19.5 that apply to such returns).

16. None of the $77,950.35 of inventory at issue in this case, which Cinch now claims is too old to be returned, was ever declared obsolete by Cinch.

## COUNT I - BREACH OF CONTRACT AND BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

17. Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1-16 of the Complaint as if fully set forth herein.

18. By virtue of its refusal to repurchase from Gerber all inventory required to be repurchased upon termination under the terms of the Agreement, Cinch has breached its obligations that it owes Gerber under the terms of the Agreement.

19. In the alternative, if Cinch is not liable to Gerber pursuant to the terms of the Agreement, Cinch is nevertheless liable to Gerber for breach of an implied contract to accept the return of inventory.

20. By virtue of its refusal to repurchase from Gerber all inventory required to be repurchased upon termination under the terms of the Cinch Agreement, Cinch has injured the rights of Gerber to receive the fruits of the Agreement and/or has exercised its discretion in a manner inconsistent with the reasonable expectations of the parties and/or has acted in an inequitable manner in violation of the implied duty of good faith and fair dealing inherent in every contract.

21. By virtue of its refusal to repurchase from Gerber all inventory required to be repurchased upon termination under the terms of the Cinch Agreement, Cinch has injured the rights of Gerber to receive the fruits of the Agreement and/or has exercised its discretion in a manner inconsistent

with the reasonable expectations of the parties and/or has acted in an inequitable manner in violation of the implied duty of good faith in the performance of contracts imposed upon all merchants by the Illinois General Laws, 810 ILCS 5/1-201(19), 810 ILCS 5/1-203 and 810 ILCS 5/1-203 2-103.

22. As a direct, proximate and intended result of the foregoing, plaintiff has suffered serious financial losses for which the defendant Cinch is liable.

## COUNT II- UNJUST ENRICHMENT

23. Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1-22 of the Complaint as if fully set forth herein.

24. Section 2.1 of the Agreement required Gerber to maintain "adequate inventory and facilities to assure optimum distribution of the Cinch Products."

25. Cinch benefitted from Gerber's carrying large quantities of Cinch inventory. Cinch benefitted from Gerber's increased carrying costs of the inventory and Cinch's concomitant increase in cash on hand.

26. Gerber purchased Cinch inventory for potential future sales even though Gerber did not have immediate customers for said inventory. Gerber purchased inventory even though it did not have immediate customers for said inventory because of its reasonable expectations that Cinch would accept the return of all unsold catalog products upon Gerber's termination as a distributor.

27. According to the dictates of equity and good conscience, Cinch should not retain the benefits of Gerber's keeping inventory on hand in order to better service Cinch.

28. It is unreasonable for Cinch to have expected Gerber to carry Cinch inventory without expecting to accept the return of all unsold catalog products upon Gerber's termination as a distributor.

29. Cinch has been unjustly enriched by retaining the benefits from the sale of inventory to Gerber for inventory not designated at the time of sale toward specific customers.

30. It is unreasonable for Cinch to expect Gerber to carry inventory, which Cinch refuses to accept back because of age, when Cinch never obsoleted such inventory.

31. Cinch has been unjustly enriched by retaining the benefits of Gerber's carrying its inventory for years, when Cinch never obsoleted such inventory.

## COUNT III - BREACH OF CONTRACT

32. Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1-31 of the Complaint as if fully set forth herein.

33. By virtue of its failure to give written notice of its discontinuance of the disputed parts which Cinch now claims are too old and obsolete, Cinch breached the terms of its contract with Gerber.

34. As a direct, proximate and intended result of the foregoing, plaintiff has suffered serious financial losses for which the defendant Cinch is liable.

## PRAYERS FOR RELIEF

WHEREFORE, the plaintiff prays that the Court enter judgment in its favor and that the Court enter the following relief:

1. Enter Judgment against the defendant Cinch for appropriate damages; or, in the alternative:

2.  Enter Judgment against the defendant Cinch for damages in the amount of losses suffered by Gerber in reselling Cinch inventory after its termination by Cinch and enjoin Cinch to repurchase from Gerber all unsold Cinch inventory listed in Cinch's price lists or catalogues and in saleable condition as of the date of Gerber's termination still held by Gerber at the conclusion of the trial at the prices required by the Agreement.

3.  Order Cinch to pay appropriate costs and expenses of this litigation, including attorneys fees..

4.  Issue such other, further relief as this Court deems equitable and just under the circumstances.

BY GERBER RADIO SUPPLY CO.'S
ATTORNEYS,

Stephen Schultz, Esq.
BBO # 447680
Mark Engel, Esq.
BBO # 154440
Engel & Schultz, P.C.
125 High Street
High Street Tower, Suite 2601
Boston, MA 02110
(617) 951-9980

Date: 3/4/04

A TRUE COPY

Attest: _____

A TRUE COPY
Attest: _____