UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| | \* | |
| GERBER RADIO SUPPLY CO., INC. | \* | |
| d.b.a. GERBER ELECTRONICS, | \* | |
|      Plaintiff | \* | |
| | \* | CIVIL ACTION #   04-10724 RGS |
|   -vs- | \* | |
| | \* | |
| CINCH CONNECTOR, INC. | \* | |
|      Defendant | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## FIRST AMENDED COMPLAINT

1.     This is a cause of action based on claims of violations of breach of contract and unjust

enrichment. The case is brought by the plaintiff distributor seeking damages against the defendant

supplier, because of its failure to accept the return of inventory from the distributor after the

termination of the parties' distributorship agreement.   In the alternative to seeking damages,

plaintiff seeks an injunction against the defendant supplier requiring it to accept the return of its

inventory in exchange for payment for the inventory.

2.     This Court has jurisdiction pursuant to M.G.L. c. 212 § 4 and c. 214 § 1.  Venue is

properly laid under M.G.L. c. 223 § 8.

## THE PARTIES

3.      Plaintiff Gerber Radio Supply Co., Inc., d.b.a. Gerber Electronics (hereafter "Gerber") is a Massachusetts corporation with a usual place of business in Norwood, Massachusetts. Gerber is a distributor of electronic components, including, among other things, connectors.

4.      Defendant Cinch Connector, Inc. ("Cinch"), upon information and belief, is a corporation headquartered in Illinois. Cinch is the manufacturer, of among other things, connectors.

## THE FACTS

5.      On or about May 8, 1980, TRW, Inc. and Gerber entered into a Distributorship Agreement ("the Agreement"). The Agreement, which is attached hereto as *Exhibit 1*, provides, in relevant part, "TRW hereby appoints Distributor [Gerber] on a non-exclusive basis as a TRW Authorized Electronic Components Distributor..."

6.      At the time of the execution of the Agreement, Cinch Connectors was a division of TRW, Inc.

7.      In or about November 1987, Labinal Components and Systems, Inc. ("LCS") entered into an agreement with TRW, Inc. for the purchase of the Cinch Connectors division of TRW.

8.      On or about October 27, 1987, Gerber received correspondence from LCS indicating LCS's intention to continue Gerber's appointment as distributor for the products manufactured by Cinch Connector.

9.      On or about October 29, 1987, Gerber received correspondence from TRW indicating Gerber's contract for distribution of Cinch Connector products to would be assigned to LCS.

10.     Enclosed with the October 29, 1987 correspondence from TRW was an Assignment and Assumption Agreement ("Assumption Agreement"). The Assumption Agreement states, "There is

2

a valid Distributor Agreement dated May 8, 1980... presently in existence between ASSIGNOR [TRW] herein and Gerber Radio Supply, Inc..."

11.    The Assumption Agreement further states, "The ASSIGNEE [LCS], its successors and assigns, agree to be fully bound by the terms and conditions of said [May 8, 1980] Agreement and to perform pursuant to said terms and conditions."

12.    On or about November 17, 2000, Cinch proposed to Gerber a revised Distributorship Agreement ("2000 Agreement" attached hereto as *Exhibit 2*).

13.    The 2000 Agreement was virtually identical to the Agreement in all relevant provisions.

14.    The 2000 Agreement was apparently not signed by either party.

15.    From on or about May 10, 1980 through November 21, 2002, the parties conducted their business relationship pursuant to the terms of the Agreement.

16.    On November 21, 2002, pursuant to Section 27.2 of the Agreement, Gerber terminated the Agreement solely for the convenience of the terminating party by giving at least thirty (30) days' advance notice in writing of its election to do so.

17.    Section 28.1 of the Agreement provided:

If this Agreement is terminated under the provisions of Section 26.2, TRW will repurchase Distributor's unsold inventory of Program Products subject to the conditions of Section 30.0 and the following conditions:

. . . (b) If Distributor terminates, Distributor will be paid in accordance with Section 30.5 for Program Products less a ten percent (10%) restocking charge.

18.    Section 30.2 of the Agreement provided:

Such Program Products will not be obsolete or damaged and shall be in good, clean and resalable condition.

3

19.     On November 21, 2002, pursuant to Section 30.5 of the Agreement, Gerber sent Cinch a

list of inventory Gerber had purchased from Cinch, showing items, quantities and price

substantiation, seeking to return eligible inventory to Cinch.[1]

20.     In total, Gerber listed inventory for which it had paid $99,393.59.  Seventy seven

Thousand, Nine Hundred and Fifty Dollars and Thirty Five Cents ($77,950.35) of this inventory

was still listed for sale in a price list issued by Cinch on November 15, 2002, i.e. only seven (7)

days prior to the date of termination.  All of this inventory was Program Product in good, clean

and resalable condition.

21.     Cinch refused to repurchase Gerber's inventory upon Gerber's termination of the

Agreement.

## COUNT I - BREACH OF CONTRACT

22.     Plaintiff repeats and incorporates by reference each and every allegation contained in

paragraphs 1-21 of the Amended Complaint as if fully set forth herein.

23.     By virtue of its refusal to repurchase from Gerber all inventory required to be repurchased

upon termination under the terms of the Agreement, Cinch has breached its obligations that it

owes Gerber under the terms of the Agreement.

24.     As a direct, proximate and intended result of the foregoing, plaintiff has suffered serious

financial losses for which the defendant Cinch is liable.

---

[1]Gerber terminated the Agreement in accordance with Section 26.2 of the 2000 Proposal, which is identical to Section 30.2 of the Agreement. In all relevant provisions, the Agreement is virtually identical to the 2000 Proposal.

## COUNT II - BREACH OF IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

25.    Plaintiff repeats and incorporates by reference each and every allegation contained in

paragraphs 1-27 of the Amended Complaint as if fully set forth herein.

26.    In the alternative, if Cinch is not liable to Gerber pursuant to the terms of the Agreement,

Cinch is nevertheless liable to Gerber for breach of an implied contract to accept the return of

inventory.

27.    By virtue of its refusal to repurchase from Gerber all inventory required to be repurchased

upon termination under the terms of the 2000 Agreement, Cinch has injured the rights of Gerber

to receive the fruits of the Agreements and/or has exercised its discretion in a manner inconsistent

with the reasonable expectations of the parties and/or has acted in an inequitable manner in

violation of the implied duty of good faith and fair dealing inherent in every contract.

28.    By virtue of its refusal to repurchase from Gerber all inventory required to be repurchased

upon termination under the terms of the 2000 Agreement, Cinch has injured the rights of Gerber

to receive the fruits of the Agreements and/or has exercised its discretion in a manner inconsistent

with the reasonable expectations of the parties and/or has acted in an inequitable manner in

violation of the implied duty of good faith in the performance of contracts imposed upon all

merchants by the Illinois General Laws, 810 ILCS 5/1-201(19), 810 ILCS 5/1-203 and 810 ILCS

5/1-203 2-103.

29.    As a direct, proximate and intended result of the foregoing, plaintiff has suffered serious

financial losses for which the defendant Cinch is liable.

## COUNT III- UNJUST ENRICHMENT

30.     Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1-29 of the Amended Complaint as if fully set forth herein.

31.     Section 2.1 of the Agreement required Gerber to maintain "adequate inventory and facilities to assure optimum distribution of the Cinch Products."

32.     Cinch benefitted from Gerber's carrying large quantities of Cinch inventory. Cinch benefitted from Gerber's increased carrying costs of the inventory and Cinch's concomitant increase in cash on hand.

33.     Gerber purchased Cinch inventory for potential future sales even though Gerber did not have immediate customers for said inventory . Gerber purchased inventory even though it did not have immediate customers for said inventory because of its reasonable expectations that Cinch would accept the return of all unsold catalog products upon Gerber's termination as a distributor.

34.     According to the dictates of equity and good conscience, Cinch should not retain the benefits of Gerber's keeping inventory on hand in order to better service Cinch.

35.     It is unreasonable for Cinch to have expected Gerber to carry Cinch inventory without expecting to accept the return of all unsold catalog products upon Gerber's termination as a distributor.

36.     Cinch has been unjustly enriched by retaining the benefits from the sale of inventory to Gerber for inventory not designated at the time of sale toward specific customers.

37.     Cinch has been unjustly enriched by retaining the benefits of Gerber's carrying its inventory for years, when Cinch never obsoleted such inventory.

## COUNT IV - BREACH OF CONTRACT - 2000 AGREEMENT

38.     Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1-37 of the Amended Complaint as if fully set forth herein.

39.     If the Court determines that the 2000 Agreement governs the relationship between Cinch and Gerber, Cinch breached the terms of the 2000 Agreement by virtue of its failure to give written notice of its discontinuance of the disputed parts which Cinch now claims are too old and obsolete.

40.     As a direct, proximate and intended result of the foregoing, plaintiff has suffered serious financial losses for which the defendant Cinch is liable.

## PRAYERS FOR RELIEF

WHEREFORE, the plaintiff prays that the Court enter judgment in its favor and that the Court enter the following relief:

1.     Enter Judgment against the defendant Cinch for appropriate damages; or, in the alternative:

2.     Enter Judgment against the defendant Cinch for damages in the amount of losses suffered by Gerber in reselling Cinch inventory after its termination by Cinch and enjoin Cinch to repurchase from Gerber all unsold Cinch inventory listed in Cinch's price lists or catalogues and in saleable condition as of the date of Gerber's termination still held by Gerber at the conclusion of the trial at the prices required by the Agreement.

3.     Order Cinch to pay appropriate costs and expenses of this litigation, including attorneys fees.

4.    Issue such other, further relief as this Court deems equitable and just under the

circumstances.

BY GERBER RADIO SUPPLY CO.'S
ATTORNEYS,

_____
Mark Engel, Esq.
BBO # 154440
Stephen Schultz, Esq.
BBO # 447680
Engel & Schultz, P.C.
125 High Street
High Street Tower, Suite 2601
Boston, MA 02110
(617) 951-9980

Date: _MAY 21, 2004_

Certificate of Service

I, Mark D. Engel, hereby certify that I served a copy of the above-entitled document on counsel of record for the defendant in the above-entitled case by hand on this _20th_ day of May, 2004.

_____
Mark D. Engel

8